Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| REYNALDO BULTRÓN ROMÁN<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrida | KLRA202400670 | *Revisión* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 147867<br>Núm. de Confinado: B705-28897<br><br>Sobre: Concesión Libertad Bajo Palabra |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de enero de 2025.

Comparece Reynaldo Bultrón Román (en adelante señor Bultrón Román o recurrente) mediante un *Recurso de Revisión Judicial* para solicitarnos la revisión de la *Resolución* emitida el 8 de mayo de 2024,[1] y notificada adecuadamente el 4 de noviembre de 2024,[2] por la Junta de Libertad Bajo Palabra (en adelante, JLBP). Mediante la *Resolución* recurrida, la JLBP denegó el privilegio de libertad bajo palabra al recurrente y dispuso que el caso volvería a ser considerado en marzo de 2025, fecha en la cual el Departamento de Corrección y Rehabilitación (en adelante, DCR) debía someter un informe de ajuste y progreso con el plan de salida debidamente corroborado.[3]

Por los fundamentos que expondremos se *revoca* la *Resolución* recurrida.

---

[1] Apéndice del recurso, a las págs. 32-36.
[2] *Íd.*, a la pág. 233d.
[3] *Íd.*, a la pág. 35.

Número Identificador

SEN2024_____

I

Iniciamos por mencionar que esta es la segunda ocasión en que el recurrente comparece ante este Tribunal intermedio para que se revise una *Resolución* mediante la cual se le denegó el privilegio de libertad bajo palabra y en la cual se dispuso que su caso sería considerado nuevamente en marzo de 2025. En la *primera* ocasión, mediante *Sentencia,* emitida el 8 de octubre de 2024, en el alfanumérico KLRA202400525, este Panel desestimó el recurso instado por falta de jurisdicción tras haberse presentado de forma prematura. Tras su inconformidad con lo resuelto, el recurrente acudió ante el Alto Foro, en el alfanumérico CC2024-0761.[4] Según rezan los autos del alfanumérico KLRA202400525, el Tribunal Supremo de Puerto Rico no ha dispuesto al momento la expedición del auto de *certiorari* instado en el alfanumérico CC-2024-0761.[5]

Además, es menester mencionar que el recurrente es miembro de la población correccional y cumple una sentencia de treinta y ocho (38) años de reclusión por delitos de asesinato en segundo grado, tentativa de asesinato, Ley de Armas y violencia doméstica.[6]

Establecido lo anterior, procedemos a relatar los hechos pertinentes al recurso ante nuestra consideración.

El 8 de junio de 2023, la Unidad Sociopenal presentó un *Informe breve para referir casos de sentencia por delito grave y menos grave ante la Junta de Libertad Bajo Palabra.*[7] En el informe hizo constar que el recurrente era elegible para el privilegio de libertad bajo palabra desde el 1 de marzo de 2018.[8] En mérito de lo anterior, se le asignó al Negociado de Comunidad del Departamento de Corrección y Rehabilitación (Negociado) corroborar la oferta de

---

[4] Apéndice del recurso a las págs. 234-261.
[5] Revisión de los autos originales del alfanumérico KLRA202400525, realizada en varias ocasiones, incluyendo en el día de hoy.
[6] Apéndice del recurso, a la pág. 33.
[7] *Íd.,* a las págs. 8-10.
[8] *Íd.,* a la pág. 8.

empleo del recurrente. Mediante un *Informe breve de libertad bajo palabra*, recibido en la JLBP el 27 de junio de 2023, el Negociado informó, entre otras cosas, que en la compañía PARC Inc., la cual se dedica a la agrimensura, le habían ofrecido empleo al recurrente. El trabajo consistía en trabajar en el campo a tiempo parcial, de lunes a viernes de 7:00 am a 2:00 pm, ganando $8.50 dólares la hora. A su vez, detalló que el señor Roberto Colón Collazo, propietario de la aludida compañía, conocía de la situación legal del recurrente y estaba dispuesto a ayudarle.[9]

Posteriormente, el 29 de agosto de 2023, la Técnica de Servicios Sociopenal, María S. Lebrón Quiñones, sometió a la JLBP el *Informe de libertad bajo palabra*.[10] En lo pertinente, detalló que el recurrente proponía residir junto a su hermana, quien vivía con su esposo en el Barrio Sabana Abajo de Carolina. Resaltó que los esposos dialogaron en pareja para recibir al señor Bultrón Román en su hogar y ambos estaban de acuerdo. Por otra parte, indicó que el recurrente contaba con una oferta de empleo para trabajar en el campo. Por último, destacó que el señor Bultrón Román propuso como amigo y consejero al esposo de su hermana, el señor Jose A. Rivera López (en adelante, señor Rivera López), sin embargo, este no cualificaba por ser su cuñado.

Así las cosas, el 30 de agosto de 2023, la JLBP celebró una vista de consideración, en la cual compareció el recurrente por derecho propio y la Técnico de Servicios Sociopenales, Yanitza Burgos Mateo. Sin embargo, el recurrente no pudo ser evaluado dado a que el DCR no había presentado un Informe de Ajuste y Progreso actualizado.[11] En consecuencia, el 6 de septiembre de 2023, notificada el 8 del mismo mes y año, la JLBP emitió una

---

[9] Apéndice del recurso, a las págs. 11-12.
[10] *Íd.*, a las págs. 13-18.
[11] *Íd.*, a la pág. 19. Véanse, además, las págs. 32a y 33.

*Resolución Interlocutoria* en la que ordenó al DCR a remitir un Informe de Ajuste y Progreso actualizado.[12] Igual *Resolución* emitió la JLBP el 19 de diciembre, notificada el 26 del mismo mes y año. Ahora bien, en esta también señaló que no se había presentado una evaluación actualizada de la Sección Programa de Evaluación y Asesoramiento (SPEA).[13] A tenor, la JLPB ordenó la suspensión de la determinación en el caso por un término de sesenta (60) días, con el fin de contar con la información requerida y poder evaluar el caso.[14]

No fue hasta el 7 de febrero de 2024, que la JLBP recibió el *Informe de Ajuste y Progreso* por parte del DCR.[15] En el informe, se expresó que los aspectos positivos a resaltar del recurrente eran los siguientes: (i) es un primer ofensor; (ii) se ha beneficiado de todos los tratamientos existentes de la Administración de Corrección y de estudios, talleres y trabajos; (iii) a la fecha, poseía plan de salida completo en las tres áreas: oferta de empleo, trabajo y vivienda; y (iv) no había sido objeto de querellas ni informes negativos, durante su reclusión.[16] Por otra parte, en cuanto a los aspectos negativos, indicó que el recurrente no poseía actualización de las terapias de SPEA, a las cuales fue referido.[17] Sobre el amigo y consejero, únicamente, se indicó que la persona prepuesta por el recurrente era el señor Rivera López. [18]

Luego, mediante misiva emitida por el DCR el 12 de marzo de 2024, y recibida por la JLBP en esa misma fecha, se le notificó que el recurrente cambió su amigo y consejero al señor Julio Colón

---

[12] Apéndice del recurso, a las págs. 19-21.
[13] *Íd.*, a las págs. 22-23.
[14] *Íd.*, a la pág. 22.
[15] *Íd.*, a las págs. 24-25.
[16] *Íd.*, a la pág. 25.
[17] *Íd.*
[18] *Íd.*

Feliciano, quien tenía su domicilio en el Municipio de Canóvanas, Puerto Rico.[19]

De ahí, el 20 de marzo de 2024, se presentó a la JLBP el *Informe del Oficial Examinador.*[20] En el mismo, se recomendó no conceder al recurrente el privilegio de libertad bajo palabra. Ello, puesto a que se entendió que el peticionario aún no era un buen candidato para merecer el referido privilegio ya que carecía de un plan de salida viable en las áreas de residencia y de amigo y consejero.

De ahí, el 8 de mayo de 2024, la JLBP emitió la *Resolución* recurrida.[21] La misma fue notificada <u>adecuadamente</u> el 4 de noviembre de 2024.[22] Mediante este dictamen, se acogió la recomendación del informe del oficial examinador y se denegó el privilegio de libertad bajo palabra al recurrente. A su vez, en la *Resolución* se dispuso que el caso volvería a ser considerado en marzo de 2025, fecha en la cual el DCR debía someter un informe de ajuste y progreso con el plan de salida debidamente corroborado.

Como parte del dictamen emitido, la JLBP consignó las siguientes ocho (8) determinaciones de hechos:

1. Surge del Informe de Libertad Bajo Palabra, realizado el 29 de agosto de 2023, por la (tss), María S. Lebrón Quiñones, del Programa de Comunidad de Carolina del DCR, que el peticionario carece una residencia y un candidato amigo consejero viables.

2. El peticionario se encuentra [en] custodia mínima desde el 22 de octubre de 2019, conforme se desprende de su expediente.

3. El peticionario cuenta con muestra de ADN con fecha del 20 de octubre de 2011, cumpliendo así con la Ley 175 del 1998, según enmendada.

---

[19] *Íd.*, a la pág. 32.
[20] Apéndice del recurso, a las págs. 32a-32d.
[21] *Íd.*, a las págs. 33-36.
[22] *Íd.*, a la pág. 233d. En la primera ocasión en la cual el recurrente acudió ante este Tribunal para plantear su inconformidad con la *Resolución* recurrida, al revisar el recurso, nos percatamos que la misma no fue notificada al recurrente por lo que lo desestimamos por falta de jurisdicción por prematuro. Así, pues, el 4 de noviembre de 2024, la JLBP notificó correctamente la *Resolución* que nos ocupa. Véase *Sentencia* del alfanumérico KLRA202400525.

4. El peticionario completó el Programa Aprendiendo A Vivir Sin Violencia el 21 de junio de 2017.

5. El peticionario cuenta con una evaluación psicológica efectuada el 8 de febrero de 2024 por el personal designado de la Sección de Programa de Evaluación y Asesoramiento (SPEA).

6. El peticionario posee un certificado otorgado el 29 de agosto de 2018 a confinados educadores pares del DCR por la presentación de la obra: Prevención del Suicidio.

7. El peticionario posee certificados otorgado los días 8 de marzo de 2018 y 5 de abril de 2018 por su participación en la obra "El Party" que cambi[ó] tu vida.

8. El peticionario posee un certificado de participación en la obra de Teatro Social "Colmado El Desahogo" de 25 de octubre de 2013.[23]

De igual forma, la JLPB consignó sus conclusiones de derecho. En consecuencia, la JLPB concluyó que el peticionario carecía de un plan de salida viable en las áreas de residencia y amigo consejero por lo cual no cualificaba para beneficiarse del privilegio de libertad bajo palabra.[24]

Así las cosas, el 4 de diciembre de 2024, el recurrente acudió ante este Tribunal de Apelaciones y presentó una *Petición de revisión administrativa* en la cual esgrimió la comisión del siguiente señalamiento de error:

> ABUSÓ DE SU DISCRECIÓN LA JLBP AL NEGAR EL PRIVILEGIO AL RECURRENTE CUANDO ÉSTE CUMPLIÓ CON PROVEER UN PLAN DE SALIDA ESTRUCTURADO Y VIABLE, LA DETERMINACIÓN NO ESTÁ FUNDAMENTADA EN EVIDENCIA SUSTANCIAL EN VIOLACIÓN AL DEBIDO PROCESO DE LEY ESTABLECIDO MEDIANTE EL REGLAMENTO DE LA JLBP, *SUPRA*.

Mediante *Resolución* del 5 de diciembre de 2024, concedimos al recurrente hasta el 12 de diciembre de 2024, para acreditar el cumplimiento con la Regla 58 del Reglamento del Tribunal de Apelaciones. De igual forma, concedimos a la Oficina del Procurador

---

[23] Apéndice del recurso, a la pág. 33.
[24] *Íd.*, a la pág. 35.

General hasta el 3 de enero de 2025, para presentar su alegato en oposición.

El 10 de diciembre de 2024, compareció el recurrente para acreditar el cumplimiento con la Regla 58 del Reglamento de este Tribunal. Ese mismo día, entiéndase el 10 de diciembre de 2024, mediante *Resolución*, le expresamos a las partes que, luego de revisar el apéndice del recurso con detenimiento, nos percatamos de que la *Resolución* recurrida en el caso del título se encontraba a su vez en revisión ante el Alto Foro, por lo que le concedimos un término para expresar la razones por las cuales no debíamos desestimar este recurso.

En cumplimiento con lo ordenado, el 16 de diciembre de 2024, ambas partes presentaron los escritos correspondientes. La JLBP arguyó que, puesto a que el recurso ante el Tribunal Supremo se presentó en virtud de que este Tribunal concluyó en la *Sentencia* del alfanumérico KLRA202400525, que la notificación de la *Resolución* que nos ocupa fue defectuosa, y que, posterior a ello, la JLBP emitió una nueva notificación al recurrente, el recurso instado en el Alto Foro se tornó académico. No obstante, lo anterior, la JLBP razonó que debíamos abstenernos de intervenir en este recurso hasta que el Tribunal Supremo atendiera la petición de *Certiorari* ante dicho foro. Por otro lado, la parte recurrente planteó que estamos en posición de atender el presente recurso dado a que, según el ordenamiento jurídico vigente, la presentación de una solicitud de *certiorari* ante el Tribunal Supremo no suspende los procedimientos ante el Tribunal de Apelaciones, salvo una orden en contrario. Visto lo cual y habiendo decursado el término concedido a la Oficina del Procurador General para presentar su posición sin haberlo hecho, procederemos a resolver sin el beneficio de su comparecencia.

II

## A. Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[25] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[26] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[27] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[28] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[29] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[30] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[31]

---

[25] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[26] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[27] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[28] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[29] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[30] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA,* 149 DPR 263, 279-280 (1999).
[31] *Asoc. Vec. Altamesa Este v. Municipio de San Juan,* 140 DPR 24, 34 (1996).

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[32] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[33] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[34]

Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[35] Entiéndase que, aunque los tribunales están llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[36]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo

---

[32] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[33] *Íd.*
[34] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[35] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra.
[36] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 2024 TSPR 29, 213 DPR __ (2024).

descansar en meras alegaciones.[37] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[38] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las no sustituirá el criterio de la agencia por el suyo.[39]

**B. Las Determinaciones de Hechos y Conclusiones de Derecho en las Resoluciones de una Agencia Administrativa**

Sabido es que la revisión judicial de las adjudicaciones administrativas va tanto sobre la esfera de los hechos como la del derecho.[40] A esos efectos, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG) dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".[41] Mientras que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[42] Entiéndase que las determinaciones de hecho deben de avalarse siempre y cuando estén sostenidas por evidencia sustancial que surja de la totalidad del expediente.[43] El anterior régimen normativo se fundamenta en el principio de razonabilidad, mediante el cual se determina si la

---

[37] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

[38] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).

[39] *Otero v. Toyota*, 163 DPR 716, 728 (2005).

[40] *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871, 904 (2023).

[41] Ley 38-2017, 3 LPRA sec. 9675.

[42] *Íd.*

[43] *Hernández Feliciano v. Municipio de Quebradillas*; 211 DPR 99, 115 (2023).

actuación de la agencia es arbitraria, ilegal o irrazonable o, incluso, supone un abuso de discreción.[44]

En cuanto a la evidencia sustancial, esta se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[45] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[46] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[47] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[48]

Ahora bien, las conclusiones de derecho son revisables en todos sus aspectos.[49] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[50] Así pues, si el fundamentos de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[51] Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[52] Si del análisis realizado se

---

[44] *Otero Rivera v. Bella Retail Group, Inc. y otros,* 2024 TSPR 70, 213 DPR __ (2024).
[45] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota,* supra, a la pág. 728.
[46] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[47] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[48] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.
[49] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[50] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[51] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[52] *Ruiz Matos v. Departamento de Correccion y Rehabilitación*, 2023 TSPR 144, 213 DPR ___ (2023); *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección,* 185 DPR 603, 626 (2012).

desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[53]

## C. Libertad Pajo Palabra

El sistema de libertad bajo palabra permite que una persona convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad.[54] Así, pues, este beneficio tiene el propósito principal de ayudar a las personas confinadas a reintegrarse a la sociedad en forma positiva tan pronto estén capacitados, sin tener que estar encarcelados por todo el término de la sentencia impuesta.[55] Ahora bien, la libertad bajo palabra es un privilegio, no un derecho, el cual se otorga en el mejor interés de la sociedad y cuando las circunstancias establezcan que propiciará la rehabilitación del confinado.[56]

La Ley de la Junta de Libertad Bajo Palabra regula los requisitos para que una persona solicite este privilegio, así como aquellos que tomará en cuenta la JLBP para concederlo.[57] Particularmente, el Artículo 3-C dispone que:

> [u]na persona recluida en una institución carcelaria en Puerto Rico o en cualquier Programa de Desvío que cumpla con los requisitos establecidos por la Junta mediante reglamento o en esta ley, que muestre un alto grado de rehabilitación y que no represente un riesgo a la sociedad, podrá solicitar formalmente el privilegio de libertad bajo palabra dentro de la jurisdicción de la Junta mediante los mecanismos que disponga la misma, igualmente mediante reglamento. [. . .].[58]

---

[53] *Cruz v. Administración*, 164 DPR 341, 357 (2005).
[54] *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987).
[55] *Íd.*
[56] *Rivera Beltrán v. J.L.B.P.,* 169 DPR 903, 905 (2007); *Lebrón Pérez v. Alcaide, Cárcel de Distrito,* 91 DPR 567, 573 (1964).
[57] Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de Julio de 1974, 4 LPRA sec. 1501, *et seq.*
[58] *Íd.*, Art. 3-C, 4 LPRA sec. 1503c.

Una vez, la JLBP reciba la solicitud, "[p]ara determinar si concede o no la libertad bajo palabra, [. . .] tendrá ante sí toda la información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado, incluyendo la actitud de la comunidad respecto a la liberación condicional del sujeto, y una evaluación que deberá someter la Administración de Corrección".[59] Igualmente, la JLBP, para determinar la elegibilidad de una persona a la libertad bajo palabra, deberá tomar en consideración los siguientes criterios:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
>
> (2) Las veces que el confinado haya sido convicto y sentenciado.
>
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
>
> (4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.
>
> (5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.
>
> (6) La edad del confinado.
>
> (7) El o los tratamientos para condiciones de salud que reciba el confinado.
>
> (8) La opinión de la víctima.
>
> (9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.
>
> (10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.
>
> (11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. [. . . ].[60]

Por otra parte, el Reglamento de la Junta de Libertad Bajo Palabra[61] establece en la Sección 10.01 de su Artículo X que la JLBP tomará igualmente en consideración, entre otras cosas, que la

---

[59] *Íd*, Art. 3(a)(6), 4 LPRA sec. 1503.
[60] Ley Núm. 118, *supra*, Art. 3-D, 4 LPRA sec. 1503d.
[61] Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9232 de 18 de noviembre de 2020.

persona peticionaria cuente con un plan de salida estructurado y viable en las áreas oferta de trabajo y/o estudio, residencia y amigo y consejero, el cual deberá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.[62]

En lo referente a la residencia, la persona deberá indicar el lugar en el cual pretende residir, el nombre completo y número de teléfono de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia, para que, así, se realice una investigación sobre la aptitud de la comunidad en la cual propone residir.[63] Para establecer que la vivienda propuesta es viable, la JLBP tomará en cuenta que:

> (a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y cómo el peticionario se relaciona con estos.
>
> (b) Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.
>
> (c) Condición de la planta física de la residencia y cantidad de habitantes de la misma.
>
> (d) Si la residencia propuesta está relativamente cercana a la residencia de la víctima de delito.
>
> (e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta, excepto se encuentre incluido en el contrato de vivienda o certificación de la administración correspondiente.
>
> (f) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.[64]

En cuanto al amigo y consejo, este tiene la responsabilidad de colaborar con la rehabilitación de la persona peticionaria.[65] Debe, además, cumplir con los requisitos siguiente:

> (a) No tener relación de afinidad hasta el segundo grado, o de consanguinidad con el peticionario. Esta prohibición no aplicará en aquellos casos que la Junta,

---

[62] *Íd.*, Art. X, Sec. 10.01(B)(7)(a).

[63] Reglamento Núm. 9232, *supra*, Art. X, Sec. 10.01(7)(e).

[64] *Íd.*, Art. X, Sec. 10.01(7)(e)(iv).

[65] *Íd.*, Art. X, Sec. 10.01(7)(f)(i).

en el ejercicio de su discreción, entienda meritorio a base de las circunstancias particulares del caso.

(b) No ser o haber sido representante legal del peticionario en cualquier proceso judicial o administrativo.

(c) Tener la mayoría de edad.

(d) Tener contacto frecuente con el peticionario, tiene que ser residente de Puerto Rico, se recomienda que resida en el área limítrofe al programa de la comunidad con competencia.

(e) Ser una persona de integridad moral.

(f) No tener antecedentes penales.[66]

Además de velar por el cumplimiento de los antedichos requisitos, se deberá realizar una investigación en la comunidad sobre la conducta e integridad moral de la persona propuesta para amigo consejero.[67] No obstante, lo anterior, la falta de amigo y consejero no será razón suficiente para denegar el privilegio de libertad bajo palabra.[68]

Establecido lo anterior, precisa señalar que la JLB tendrá la discreción de considerar los antedichos criterios según estime conveniente.[69] Ahora bien, será importante que "[c]uando la Junta deniegue la libertad bajo palabra, expresará individualmente en su resolución las determinaciones de hecho y conclusiones de derecho que fundamentan dicha determinación, así como indicará la fecha (mes y año) en que volverá a considerar el caso.[70]

Finalmente, en lo pertinente a este caso, es menester destacar que, en los casos que se presentan ante la consideración de la JLBP por primera vez, debe celebrarse una vista de consideración.[71] La misma, podrá celebrarse ante la Junta en pleno, o cualquier miembro o ante un oficial examinador.[72]

---

[66] *Íd.,* Art. X, Sec. 10.01(7)(f)(ii).
[67] Reglamento Núm. 9232, *supra,* Art. X, Sec. 10.01(7)(f)(iii).
[68] *Íd.*, Art. X, Sec. 10.01(7)(f)(v).
[69] *Íd.*, Art. X, Sec. 10.01(11).
[70] *Íd.*, Art. XII, Sec. 12.3(B).
[71] *Íd.*, Art. XII, Sec. 12.1(A).
[72] *Íd.*, Art. XI (C)

## III

Antes de disponer del presente recurso, es necesario reseñar que, según indicamos anteriormente, que, a la fecha se encuentra ante la consideración del Tribunal Supremo de Puerto Rico una petición de *certiorari,* la cual versa sobre la misma *Resolución* que nos ocupa, en el alfanumérico CC2024-0761. Ahora bien, según expuso el recurrente en su *Moción en cumplimiento de resolución* del 16 de diciembre de 2024, la Regla 20 del Reglamento del Tribunal Supremo de Puerto Rico es clara en que "una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Apelaciones o el Tribunal de Primera Instancia, salvo una orden en contrario expedida por el Tribunal Supremo, a iniciativa propia o a solicitud de parte". [73] En vista de que, al día de hoy, el Alto Foro no ha emitido una orden paralizando los procesos ante este Foro Apelativo, nos encontramos en posición de disponer del presente recurso.

Establecido lo anterior, procederemos a discutir el error esgrimido por el recurrente.

El único señalamiento de error planteado en el presente caso versa sobre la inconformidad del señor Bultrón Román con lo resuelto por la JLPB cuando dispuso no concederle el privilegio de libertad bajo palabra. Aduce que la JLBP cometió el error señalado porque contrario a lo resuelto, el plan de salida presentado por el recurrente era uno estructurado y viable, así como que la decisión tomada no fue una fundamentada en evidencia sustancial. Luego de revisar minuciosamente la totalidad del recurso del título, así como los autos del alfanumérico KLRA202400525, el cual incluye el Expediente Administrativo Núm. 147867 de la JLBP, justipreciamos que el error esgrimido por el recurrente fue cometido.

---

[73] 4 LPRA Ap. XXI-B, R. 20 (j) (1).

Según reseñamos, la Sección 4.5 de la LPAUG establece que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".[74] La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[75] Entiéndase, que esto requerirá que el Foro Apelativo, al ejercer sus facultades revisoras, considere la evidencia en su totalidad, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido, para, así, evaluar si la evidencia es suficiente para sostener las determinaciones de hecho esgrimidas por la agencia.[76] Tras evaluar la totalidad del expediente ante nuestra consideración, nos es forzoso concluir que las determinaciones de hecho esbozadas por la agencia, en la *Resolución* que nos ocupa, no están basadas en evidencia sustancial, en particular la determinación de hecho número uno (1). Veamos.

El proceso para que el recurrente fuera considerado para libertad bajo palabra inició el 8 de junio de 2023, cuando la Unidad Sociopenal del DCR presentó una *Informe breve para referir casos de sentencia por delito grave y menos grave ante la Junta de Libertad Bajo Palabra.* Subsiguientemente, el 27 de junio de 2023, el Negociado de la Comunidad del DCR presentó a la JLBP un *Informe breve de libertad bajo palabra,* en el cual informó que el recurrente contaba con una oferta de trabajo. Luego, el 29 de agosto de 2023, el DCR sometió a la JLBP el *Informe de libertad bajo palabra,* preparado por la TSS María S. Lebrón Quiñones. De este resaltan *dos* (2) conclusiones esenciales para disponer de este caso. La

---

[74] Ley 38-2017, *supra,* 3 LPRA sec. 9675.
[75] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota,* supra, a la pág. 728.
[76] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* supra, a la pág. 437.

*primera* es que se concluyó que el "**hogar propuesto es viable**".[77]

Sobre la residencia propuesta por el recurrente se detalló lo siguiente:

> El confinado propone residir junto a su hermana Susana Bultrón Román, y su compañero Jose A. Rivera L[ó]pez en el Barrio Sabana Abajo carr. 190 km 3 hm 5, Callejón Bultrón Carolina Puerto Rico 00982. Intentamos comunicarnos con la Sra. Bultrón al número telefónico provisto por el confinado sin éxito. Se le dejaron varios mensajes de voz en la grabadora. No recibimos respuesta de la dama. Sin embargo, su compañero compareció a la oficina y nos informó que ella se encuentra en tratamiento por condición médica de la espalda, los cuales le provocan mucho sueño. Pero ya habían dialogado como pareja sobre recibir al confinado en su hogar y están de acuerdo. La Sra. Bultrón es originaria del sector, así como sus padres, ya fallecidos. La casa es herencia, y no tiene deudas. La residencia es en madera y zinc. Tiene 3 habitaciones y 1 baño.
>
> Cuanta con verja alrededor de la propiedad, tiene patio. Al lado tiene un terreno sembrado con árboles frutales, panas y guineos. No tiene marquesina. Está pintada en color rosado y blanco. Está en buen estado, y los alrededores limpios y organizados. Cuentan con la disponibilidad de recibirlo y ayudarlo en su proceso de rehabilitación.
>
> Entiende que los hechos que se le imputan al confinado fueron sucesos desafortunados y mantiene comunicación con sus hijos a pesar de la distancia. Jos[é] y su esposa están casados desde el 2008 y mantienen una relación desde 2002. Susana es pastora en la iglesia pentecostal Buscando el Rostro de Dios y Santidad en Rio Piedras, cerca de Res. Monte Park, se desempeña como pastora cristiana hace 9 años, fue la que entreg[ó] a su hermano a la policía tras los hechos cometidos.[78]

La *segunda* conclusión a resaltar del *Informe de libertad bajo palabra* es que, contrario a la vivienda, se concluyó que el amigo y consejero propuesto por el recurrente no era viable, dado a que era el esposo de su hermana, el señor Rivera López.

De ahí, el 30 de agosto de 2023, **se celebró una vista de consideración, en la cual no se pudo evaluar** al recurrente, puesto a que el DCR no había presentado un *Informe de ajuste y progreso*

---

[77] Apéndice del recurso, a la pág. 17. (Énfasis suplido).
[78] Apéndice del recurso, a la pág. 16.

actualizado. A esos efectos, la JLBP emitió dos (2) resoluciones interlocutorias, notificadas el 8 de septiembre de 2023, y el 26 de diciembre del mismo año, respectivamente, en las cuales le ordenó al DCR presentar el antedicho informe. En la segunda resolución interlocutoria, además, **ordenó la suspensión** de la determinación del caso por un término de sesenta (60) días, para que se volviera a evaluar una vez se tuviera el informe requerido.

En cumplimiento con lo ordenado, el 7 de febrero de 2024, la JLBP recibió el *Informe de ajuste y progreso* de parte del DCR. En el mismo, se dispuso que el recurrente "**POSEE PLAN DE SALIDA COMPLETO EN LAS TRES [Á]REAS DE OFERTA DE EMPLEO, TRABAJO Y VIVIENDA**. [...]."[79] En cuanto al amigo y consejero, solo se expresó que el recurrente había propuesto para ese rol al señor Rivera López.

Posteriormente, el 12 de marzo de 2024, el DCR remitió una misiva a la JLBP en la cual le informó que el recurrente cambió su amigo y consejero al señor Julio Colón Feliciano. Subsiguientemente, el 20 de marzo de 2024, se presentó a la JLBP el *Informe del Oficial Examinador*, en el cual se dispuso que "tomando en consideración todos los factores del presente caso, [...] el peticionario no cualifica para beneficiarse del privilegio de libertad bajo palabra". Ello, puesto a que "carece de un plan de salida viable en las áreas de amigo y consejero". [80]

Evaluado lo anterior, la JLBP acogió las recomendaciones del *Informe del Oficial Examinador,* así como las determinaciones de hecho esgrimidas en el mismo, y le denegó el privilegio de libertad bajo palabra al recurrente, mediante la *Resolución* recurrida. Lo concluido por la JLBP se basó en la determinación de hecho número

---

[79] Apéndice del recurso, a la pág. 25. (Énfasis suplido).
[80] *Íd.*, a la pág. 32c.

uno (1) de su *Resolución*, la cual fue acogida del *Informe del oficial examinador* y la cual establece lo siguiente:

1. Surge del Informe de Libertad Bajo Palabra, realizado el 29 de agosto de 2023, por la (tss), María S. Lebrón Quiñones, del Programa de Comunidad de Carolina del DCR, que el peticionario carece una residencia y un candidato amigo consejeros viables.

[...]. [81]

Examinado el expediente ante nuestra consideración en su totalidad, coincidimos en que la evidencia no sostiene la anterior determinación de hecho, particularmente, puesto a que de los informes presentados previo a que se rindiera el *Informe del oficial examinador* se puede constatar que no es correcto que el recurrente carece de una residencia viable.

Sin ánimos de ser reiterativos, conforme reseñamos previamente, en el *Informe de libertad bajo palabra* del 29 de agosto de 2023, se concluyó que el "**hogar propuesto es viable**",[82] igualmente, en el *Informe de ajuste y progreso,* recibido el 7 de febrero de 2024, se indicó que el recurre "**POSEE PLAN DE SALIDA COMPLETO EN LAS TRES [Á]REAS DE OFERTA DE EMPLEO, TRABAJO Y VIVIENDA**. [...]".[83] De manera que, claramente se desprende del expediente administrativo que la residencia propuesta por el recurrente es una viable. Además, es menester resaltar que, nada en el expediente, ni en ninguno de los documentos ante nuestra consideración, concluye o expresa que la residencia propuesta por el recurrente no era viable. Por consiguiente, concluimos que la determinación de hecho número uno (1) de la *Resolución* recurrida no se basa en evidencia

---

[81] *Íd.,* a la pág. 33. Huelga destacar que en el Informe del Oficial Examinador la determinación de hecho expresaba que el *Informe de Libertad Bajo Palabra* fue realizado el 5 de febrero de 2024, esto posteriormente se corrigió al emitirse la *Resolución* final de la JLB, y se indicó que el aludido informe fue rendido el 29 de agosto de 2024.  Esta información fue constatada en el apéndice del recurso y, en efecto, el *Informe de Libertad Bajo Palabra* fue rendido en la fecha que reza la *Resolución* recurrida. Véase, Apéndice del recuso, a la pág. 18.
[82] Apéndice del recurso, a la pág. 17. (Énfasis suplido).
[83] *Íd.,* a la pág. 25. (Énfasis suplido).

sustancial, por lo que se justifica nuestra intervención en el presente caso.

Por otra parte, precisa señalar que, aunque en el *Informe de libertad bajo palabra* se concluyó que el amigo y consejero propuesto por el recurrente no era viable, dado a que era el esposo de su hermana, posteriormente, el 12 de marzo de 2024, la JLBP recibió una misiva, con ponche de recibido de esa misma fecha, en la cual se informó que el recurrente cambió de amigo y consejero. Lo anterior, no se tomó en consideración a la hora de emitir la *Resolución* que nos ocupa. Conforme destacamos en nuestra previa exposición doctrinal, el Reglamento de la Junta de Libertad Bajo Palabra requiere que se corrobore la idoneidad del candidato para amigo y consejero y que se realice una investigación en la comunidad sobre la conducta e integridad moral del mismo. Sin embargo, la referida evaluación no se efectuó. A su vez, es menester destacar que el reglamento es claro en que la falta de amigo y consejero no es razón suficiente para denegar el privilegio de libertad bajo palabra.[84] De modo, que el hecho de que el señor Rivera López no cumplía con los requerimientos para ser amigo y consejero, dado a que el candidato no puede tener relación de afinidad hasta el segundo grado con el confinado,[85] ello no era fundamento para denegarle al recurrente el privilegio de libertad bajo palabra.

De otra parte, huelga mencionar que el referido reglamento, igualmente, dispone que en los casos que se presentan ante la consideración de la JLBP por primera vez, como el que nos ocupa, debe celebrarse una *Vista de consideración.*[86] No obstante, en este caso **nunca se logró celebrar una referida vista**, ello, puesto a que, aunque el recurrente compareció el 30 de agosto de 2023 para que

---

[84] Reglamento Núm. 9232, *supra*, Art. X, Sec. 10.01(7)(f)(ii) y (iii).
[85] *Íd.,* Art. X, Sec. 10.01(7)(f)(ii).
[86] *Íd.*, Art. XII, Sec. 12.1(A).

se celebrara la misma, no pudo ser evaluado dado a que el DCR no había presentado el informe de ajuste y progreso.[87] Incluso, el 26 de diciembre de 2023, la JLBP notificó una orden, en la cual suspendió la determinación del caso, para que se volviera a evaluar cuando se les entregara el informe requerido. Aunque, el 7 de febrero de 2024, fue recibido en la JLBP el *Informe de ajuste y progreso*, nunca se celebró la *Vista de consideración* correspondiente, esto en contravención al Reglamento de la Junta de Libertad Bajo Palabra. Es por lo anterior y por todo lo antes expuesto que nos es forzoso revocar la *Resolución* recurrida.

IV

Por los fundamentos que anteceden, se *revoca* la *Resolución* recurrida. En consecuencia, se ordena a la JLBP a programar y celebrar, sin dilación, una nueva *Vista de Consideración*, en la cual evalúe la totalidad del expediente.

**Se ordena a la Secretaría a notificar copia de esta *Sentencia* a las partes y al Tribunal Supremo de Puerto Rico.**

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[87] Apéndice del recurso, a la pág. 19.